[Civ. No. 23603. Second Dist., Div. Three. Aug. 6, 1959.]

G. T. LOZANO et al., Appellants, v. JOHN A. BRANT et al., Respondents.

Jack H. Faucett and Eric Auerbach for Appellants.

J. Marion Wright and Owen E. Kupper for Respondents.

VALLÉE, J.—Appeal by plaintiffs from a judgment entered on an order sustaining a demurrer to the first amended

complaint, called the complaint, with leave to amend. Plaintiffs declined to amend and a judgment of dismissal followed. The sole question is whether the complaint states facts sufficient to constitute a cause of action.

The complaint alleges:

## Count I

1. Plaintiffs are the owners of described real property in Los Angeles County.

2. Plaintiffs acquired the property subject to the terms and conditions of a written lease, made on or about September 12, 1956, between plaintiffs' predecessors in title as lessors and defendants as lessees, of ten to twenty trailer spaces in Laco Trailer Haven located on the property, for a period of three years from date thereof, at the rate of $16 a month per space, spaces to be equipped with patio, water, and electricity, with an option to renew for three additional years. The lease contained these provisions:

"Said lessee shall have the exclusive right to rent out trailers to said trailer park.

"Rent and term of tenancy of each individual trailer space is to begin when trailer is placed thereon by lessee.

"This lease is transferrable to any responsible party of the Caucasian race."

3. At the time of making the lease and continuously thereafter until plaintiffs' purchase of the park, plaintiffs' predecessors in ownership advertised and held out to the public that there were trailers for rent at said place, and showed trailers to prospective tenants and made rental agreements for and in behalf of defendants. The holding out and offering for rent was known by defendants at all times, was done at their instance and request, and they accepted the tenants so acquired. On information and belief, plaintiffs' predecessors and defendants, immediately prior to September 12, 1956, orally agreed with each other that plaintiffs' predecessors would hold defendants' trailers out for rent and procure tenants; and pursuant thereto they did procure tenants for defendants.

4. After plaintiffs acquired the park, they notified defendants that defendants must thereafter procure their own tenants and make their own rentals. Defendants then employed a manager who has since procured tenants and supervised rentals. Defendants now engage in and conduct a trailer-rental business upon the ground which they lease from plaintiffs, maintain registration of and supervision over such

tenants, collect rentals, and arrange with plaintiffs to furnish water, lights, and sanitary facilities.

5. The purported lease is contrary to the provisions of section 18252, Health and Safety Code,[1] and is contrary to law and void.

6. The reasonable rental value of the premises occupied by defendants is the sum of $20 a month per trailer space, plus $2.00 per child, $2.00 per extra automobile, and $2.00 per animal.

7. Defendants presently occupy 21 spaces in the park.

8. Plaintiffs gave defendants notice in writing to cease and desist the business of renting and the renting of trailers.

9. Defendants refused to cease and desist their activities, and continue to occupy 21 spaces and to carry on the activities prohibited by section 18252 without the consent and against the will of plaintiffs. Plaintiffs will be damaged in the amount of money above mentioned per trailer space for each space occupied by defendants.

## Count II

Count II alleges a cause of action to quiet title to the leased property. It was stipulated below that the basis of count II is set forth in count I. (See *Ephraim* v. *Metropolitan Trust Co.*, 28 Cal.2d 824, 833 [172 P.2d 501].)

The prayer asks that the lease be declared a nullity and void; all adverse claims of defendants be determined and plaintiffs be adjudged the owners and entitled to possession of the leased premises; plaintiffs be placed in possession; and damages be awarded for detention.

Section 1668 of the Civil Code states: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Section 1667, subdivision 2, says that is not lawful which is contrary to the policy of express law, though not expressly prohibited. Section 1598 reads: "Where a contract has but a single object, and such object is unlawful, whether in whole or in part, or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, the entire contract is void." ██ "A letting of premises for use for illegal purposes with knowledge on the part of the lessor that

---

[1]All section references are to the Health and Safety Code unless otherwise indicated.

they will be so used is void and renders the lease unenforceable, whether or not the illegality appears on its face." (30 Cal.Jur.2d 160, § 37.)

The complaint alleges on information and belief the making of a collateral agreement between plaintiffs' predecessors and defendants immediately prior to the execution of the lease wherein plaintiffs' predecessors agreed to hold out for rent and procure tenants for defendants' trailers, and the subsequent procurement of tenants by them. The complaint further alleges defendants now engage in and conduct a trailer-rental business upon the ground that they lease from plaintiffs, maintain registration of and supervision over such tenants, collect rentals, and arrange with plaintiffs to furnish water, lights, and sanitary facilities; and that defendants occupy 21 spaces in the park and continue to carry on those activities prohibited by section 18252. We believe these allegations are sufficient to show the sole object of the lease was to provide ground space for defendants' trailers so that defendants, through plaintiffs' predecessors as agents, could rent defendants' trailers to third party users; and the object of the lease continues to be the rental of defendants' trailers on the grounds of the trailer park. There is an implication in the lease itself that such was its object when it says, "Rent and term of tenancy of each individual trailer space is to begin when trailer is placed thereon by lessee." This provision indicates that it was the intention of the parties that the lease was to be effective as to each space at the time defendants placed their trailer in each space. It is difficult to see any purpose in the provision unless the object of the lease was the subsequent rental of defendants' trailers in the leased spaces to third party users. Whether this object was and is unlawful depends on the application of section 18252. If such activity was or is a violation of that section, and the section was enacted for protection of the public, the complaint states facts which tend to show the invalidity of the lease and right to judicial relief. The allegations with respect to their notice to defendants that plaintiffs would not procure tenants for defendants are material as bearing on the question of whether plaintiffs are *in pari delicto*, and thus negative the existence of circumstances under which the courts would refuse to grant relief.

Section 18252 of the Health and Safety Code states: "It shall be unlawful for any person to rent or hold out for rent any trailer coach in an auto and trailer park which is owned

by or in the possession or control of the owner or operator of the auto and trailer park or his agent. The rental paid for any such trailer coach shall also be deemed to be rental for the space it occupies."

Section 18475 provides: "Any person who violates any of the provisions of this part is guilty of a misdemeanor, punishable by a fine not exceeding two hundred dollars ($200) or by imprisonment not exceeding 30 days, or by both such fine and imprisonment."

These sections of the Health and Safety Code are found in part 2, division 13 (Housing) which regulates auto and trailer parks. This part establishes standards for the construction, maintenance, and operation of such parks; and provides for permits and fees and for enforcement of the regulations therein. ■ It is manifest from a reading of the entire act that these sections were enacted by the Legislature for the protection of the public and not as a revenue measure. (*Cf. King* v. *Johnson,* 30 Cal.App. 63, 65-66 [157 P. 531].) In such a case, a lease which has for its object the evasion of the statutory prohibition implied by the imposition of a penalty is void. Defendants contend the lease is merely a lease from the owner and operator of the trailer park to defendants to operate a trailer rental business in a specific location and that there is a distinction between the owner and operator of an auto trailer park and one who rents trailers owned by him in a separate space, his business being renting his own trailers only, while the business of the operator of the trailer park is renting space to trailer owners who bring in their own trailers.

The subject of rental of trailer coaches was made a part of the code for the first time in 1949 by the addition of section 18600.5, which later was renumbered section 18252 without any change in the text. The intent of the Legislature is clarified by noting that in 1941 it enacted section 18600 which, in part, provided:

"Every trailer coach parked in a trailer camp shall comply with all of the requirements of that part of this code pertaining to buildings in an auto court and resort under any of the following circumstances: ...

"(f) Where the trailer coach is in the possession or control of the operator of the camp or his agent and is used for occupancy in the camp." (Stats. 1941, ch. 1097, p. 2798.)

This section was amended in 1947 as follows: "No trailer

coach shall be allowed to park in a trailer camp if any of the following conditions prevail: ...

"(f) Where the trailer coach is in the possession or control of the operator of the camp or his agent and is used for occupancy in the camp." (Stats. 1947, ch. 1434, p. 3000.)

It would appear that it was the intent of the Legislature to prevent the permanent occupation as dwelling places of facilities which do not conform to the requirements of building codes for permanent structures. Where trailer coaches are owned or in the possession and control of the operators of trailer parks, the conclusion follows that such coaches will remain indefinitely in the park and in effect tend to become a permanent type of housing which does not conform to building requirements which have been established for the benefit of the public. The effect of this legislation is similar to regulations by many states and municipalities which restrict the period of time that trailers may be parked or buildings occupied in tourist and trailer camps to ninety days or other reasonably limited periods. Such regulations are considered in the public interest and have been upheld as a proper exercise of the police power in protecting the public health, safety, and morals by avoiding difficulties inherent in the permanent accommodation of a large, mixed group of people confined to limited space and facilities primarily intended for transients alone. (See anno: 22 A.L.R.2d 774-802.)

From the history of the legislation it is apparent that it was the intention of the Legislature to prohibit the rental or holding out for rental of a trailer coach in an auto and trailer park where the trailer coach is owned by, or in possession or control of, the owner or operator of the park or his agent.

The question is: Does the lessee of multiple spaces who places trailers which he owns, possesses or controls in the leased spaces; who rents them, directly or through an agent, to occupying parties; who maintains registration of and supervision over such tenants; but who arranges with his lessor to furnish water, lights and sanitary facilities—come within the classification of an "owner or operator of the auto and trailer park or his agent"? If he does, then it appears that the allegations that plaintiffs' predecessors and defendants orally agreed that plaintiffs' predecessors would hold out defendants' trailers for rent and procure tenants for defendants were sufficient to allege facts tending

to show an illegal object in the making of the lease and, thus, its invalidity.

Section 18002 of the same part of the code defines "Auto and trailer park" as follows: " 'Auto and trailer park,' as used in this part, means any area or tract of land where space is rented or held out for rent to two or more owners or users of trailer coaches or tent campers furnishing their own camping equipment, or where free camping is permitted owners or users of trailer coaches or tent camping equipment for the purpose of securing their trade." Prior to amendment in 1949, this section (formerly § 18102) read "one or more" before "owners or users."

Assuming the truth of the allegations on demurrer, as we must, under the written lease defendants became the lessees of an area of land where space is rented or held out for rent to two or more users of trailer coaches. If defendants had leased only one space, put their trailer in the space and rented it, it could not be said that they were lessees or operators of a trailer park. If they had leased all of the spaces owned by plaintiffs, placed their own trailers in the spaces, and then rented or held them out for rent to third persons, there would be little argument but that they were owners and operators of a trailer park within the definition. In either instance, the fact that they contracted with others to provide utilities and services would not change their status. From the clear meaning of the section, the conclusion must be drawn that where space is rented or held out for rent to ten to twenty users of trailer coaches, the area must be deemed to be a trailer park as defined in section 18002.

The allegations of the making of the lease giving defendants the legal right to possession and control of ten to twenty spaces and the allegations that defendants conduct a trailer-rental business upon the ground which they lease from plaintiffs, maintain registration of and supervision over tenants, and collect rentals, sufficiently aver facts which show that defendants are the owners or operators of a trailer park. The allegation that plaintiffs' predecessors agreed to hold out defendants' trailers for rent and procure tenants and that after plaintiffs' refusal to do so, defendants employed a manager who ever since has and does procure tenants, sufficiently allege facts which show that defendants are the owners or have possession and control of trailer coaches on the grounds.

Where the owner or one in possession or control of the

trailer coaches and the owner or operator of the auto and trailer park are one and the same, rental of the trailer coaches is prohibited by section 18252. Therefore, the complaint shows conduct by defendants under the lease which is in violation of the law. Further, the allegations of the making of the oral agreement between defendants and plaintiffs' predecessors and subsequent rental of defendants' trailers by plaintiffs' predecessors tend to show that the lease was executed for the purpose of circumventing the statute, resulting in conduct which defeats the purpose of the regulatory measure, and may therefore be adjudged void. The allegation of plaintiffs' repudiation of the oral agreement and refusal to engage in such conduct is sufficient to show that plaintiffs are not *in pari delicto,* and thus completes their cause of action. (*Glos* v. *McBride,* 47 Cal.App. 688 [191 P. 67].)

We conclude that the complaint states facts sufficient to constitute a cause of action.

The judgment is reversed with directions to the superior court to overrule the demurrer.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied September 4, 1959, and respondents' petition for a hearing by the Supreme Court was denied September 30, 1959.